IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01114-RPM-MEH

FEDERAL FRUIT & PRODUCE CO.,

    Plaintiff,

v.

RED TOMATO, INC.,
THOMAS R. LIOTTA, and
JESSICA LIOTTA,

    Defendants.

## RECOMMENDATION ON MOTION FOR DEFAULT JUDGMENT

**Michael E. Hegarty, United States Magistrate Judge**.

Pending before the Court is Plaintiff's Motion for Default Judgment against Defendant Red Tomato, Inc. d/b/a Red Tomato Specialty Produce ("Red Tomato") [filed July 22, 2008; docket #11]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the motion was referred to this Court to conduct an evidentiary hearing and to submit proposed findings of fact and a recommendation for the disposition of the motion [docket #12].

The Court held a hearing on August 26, 2008 at which the Plaintiff appeared by telephone, represented by counsel. No one appeared on behalf of Defendant Red Tomato. Following the hearing, the Court ordered Plaintiff to submit a complete copy of Defendant's new account application, copies of all outstanding invoices issued to Defendant, a copy of Defendant's license reflecting "good standing," and an itemization of Plaintiff's attorney's fees. Plaintiff responded to the Court's order on September 3, 2008, submitting all requested documents. For the reasons stated

herein, the Court recommends that the Motion for Default Judgment be **granted**.[1]

## FINDINGS OF FACT

1. Plaintiff is engaged in the business of selling wholesale quantities of perishable agricultural commodities ("produce").

2. Between September 26, 2007 and December 20, 2007, Plaintiff sold, on credit, wholesale quantities of produce to Defendant Red Tomato, Inc. in approximately 111 shipments (one per invoice) for a total of $93,796.49. Defendant received and accepted all of the purchased produce and rejected no shipment.

3. Most of the time, the Defendant picked up the purchased produce from Plaintiff's place of business in Denver, Colorado; otherwise, the Plaintiff delivered the produce to Defendant in Commerce City. The shortest distance between Plaintiff's and Defendant's business addresses allows vehicle travel along Interstate Highway 270 (I-270); therefore, Plaintiff and Defendant likely traveled along I-270 for pick-ups and deliveries of the produce at issue.

4. Plaintiff and Defendant both are currently licensed under the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e et seq., and are in good standing.

---

[1] Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

5. Despite demand by the Plaintiff, the $93,796.49 owed by Defendant remains due and unpaid for produce delivered by Plaintiff to Defendant.

6. Included on the face of each invoice issued to Defendant is a notice of Plaintiff's intent to preserve the benefits of the PACA statutory trust, plus interest at 18% per year for any account that is 30 days or more past due, and attorney's fees for the collection of any past due accounts.

7. On a new account application signed by Defendant's representative, Thomas Liotta (another Defendant in this case), Defendant expressly agreed to pay 1-1/2% interest per month on any unpaid balance and all costs and expenses including reasonable attorney's fees incurred in the collection of any amount owed.

8. Before bringing litigation, Plaintiff attempted, unsuccessfully, to collect the debt. Defendant has since ceased operations, and its owner, Thomas Liotta, passed away in December 2007.

9. Plaintiff filed its Complaint in this action on May 27, 2008. On June 30, 2008, Plaintiff returned an executed Summons reflecting that the Complaint was served upon Defendant on June 23, 2008. Upon motion by the Plaintiff, the Clerk of this Court entered default against Defendant on July 17, 2008.

## **LEGAL STANDARD**

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides that: "[t]he court may conduct hearings . . . when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter."

After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"); *see also Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) ("A default judgment is unassailable on the merits."); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos,* 2008 WL 576245 (D. Colo. 2008) (*citing Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983). In addition, the court accepts the undisputed facts set forth in the affidavits and exhibits. *Deery American Corp. v. Artco Equipment Sales, Inc.,* 2003 WL 437762 (D. Colo. 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Limited Partnership v. Smith,* 141 F. Supp.2d 277, 281 (D. Conn. 2001). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Investment Assocs.,* 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

# LEGAL ANALYSIS

With the preceding legal standards in mind and before I consider whether damages are to be assessed in this case, I must address whether Plaintiff has established jurisdiction, and whether its claims each state a legal basis for relief.

## I. JURISDICTION

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202-03 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment). Because federal courts are courts of limited jurisdiction, there is a presumption against the existence of jurisdiction and "[t]he party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974); *see also United States v. Bustillos,* 31 F.3d 931, 933 (10th Cir. 1994) (noting that "[t]he party seeking to invoke the jurisdiction of a federal court must demonstrate that the case is within the court's jurisdiction").

Here, Plaintiff brings its action primarily under a federal statute, the PACA, for Defendant Red Tomato's failure to pay the amount due for produce purchased on credit. Plaintiff also invokes this Court's supplemental jurisdiction to hear the attendant common law claims based upon the same factual allegations. Finally, Plaintiff alleges that both parties are residents of, and conduct business in, the State of Colorado. Accepting Plaintiff's allegations as true, the Court finds that it has both personal and subject matter jurisdiction in this case.

## II. CLAIMS FOR RELIEF

In its Complaint, Plaintiff brings claims against Defendant Red Tomato under the PACA specifically for failure to maintain trust, dissipation of trust assets and failure to pay trust funds. In addition, Plaintiff claims that Defendant breached the parties' contract, breached its fiduciary duty and is liable for pre-judgment interest and attorneys' fees.

A plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof. *See Weft, Inc.,* 630 F. Supp. at 1143. The Court may hear evidence to establish the truth of any allegation. Fed. R. Civ. P. 55(b)(2) (2008). Here, the Court heard evidence on Plaintiff's claims for relief.

### A. PACA Claims

Congress originally enacted PACA "to regulate the interstate sale of perishable commodities and promote fair dealing in the sale of fruits and vegetables." *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.,* 336 F.3d 410, 413 (5th Cir. 2003) (internal quotation marks omitted). The term "interstate or foreign commerce" means commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof, or within the District of Columbia. 7 U.S.C. § 499a(b)(3).

The Complaint alleges that the parties to this action are both residents of the State of Colorado. At the hearing and in its supplemental briefing, Plaintiff introduced evidence that the produce purchased by Defendant was transported between the businesses on Interstate Highway 270 in Denver, Colorado. Moreover, Plaintiff alleges that much of its produce is grown outside the State

of Colorado, and was sold wholesale to Defendant for its distribution to retail customers. Consequently, the Court finds that the parties engaged in interstate commerce for purposes of the PACA. *See e.g. Produce Place v. United States Dep't of Agriculture*, 91 F.3d 173, 175-76 (D.C. Cir. 1996) (recognizing that a shipment of strawberries can enter the current of interstate commerce even if the berries are reserved for sale and consumption in the state where they are grown, so long as they travel along an interstate river or highway); *see also Fishgold v. OnBank & Trust Co.*, 43 F. Supp.2d 346, 349 (W.D.N.Y. 1999) (denying objection to PACA claim based upon intrastate commerce). PACA requires buyers of produce to make "full payment promptly." 7 U.S.C. § 499b(4). If a buyer fails to do so, the seller may file a complaint with the United States Department of Agriculture or file a civil suit against the buyer. *Id.* § 499e(a), (b).

In 1984, Congress amended PACA to strengthen the rights of sellers of perishable commodities on short-term credit. *See Am. Banana Co. v. Republic Nat'l Bank of N.Y., N.A.,* 362 F.3d 33, 37 (2d Cir. 2004). PACA now gives these sellers tools with which to enforce buyers' payment obligations. For instance, PACA creates, immediately upon delivery of the produce, a nonsegregated "floating" trust in favor of unpaid sellers, which attaches to the products themselves and any proceeds. 7 U.S.C. § 499e(c)(2); 7 C.F.R. § 46.46(b); *see also Reaves,* 336 F.3d at 413. Under the relevant provision, perishable commodities or proceeds from the sale of those commodities are held in trust by the buyer for the benefit of the unpaid seller until full payment is made:

> Perishable agricultural commodities received by a commission merchant, dealer, or broker ... and any receivables or proceeds from the sale of such commodities ... shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

7

7 U.S.C. § 499e(c)(2). As a PACA trustee, a produce buyer is charged with a duty "to insure that it has sufficient assets to assure prompt payment for produce and that any beneficiary under the trust will receive full payment." *D.M. Rothman & Co., Inc. v. Korea Commercial Bank of New York,* 411 F.3d 90, 94 (2d Cir. 2005) (internal quotation marks omitted).

Here, Plaintiff has provided evidence that, at the time of the transactions at issue, Defendant was a statutory trustee under PACA, and holds a valid PACA license no. 20031409 in good and active standing. *See* docket #31-3.

In order to take advantage of the statutory powers, however, the PACA statute and regulations set forth specific rules that sellers must follow. To qualify as a PACA trust beneficiary, unpaid produce suppliers must preserve their rights by either (1) filing timely written notice with the purchaser who has failed to pay, 7 U.S.C. § 499e(c)(3), or (2) including on the face of each invoice the following language required by 7 U.S.C. § 499e(c)(4):

> The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act of 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities and any receivables or proceeds from the sale of these commodities until full payment is received.

Relevant to this case, PACA applies only to produce sold on a short-term credit basis, in accordance with the statute's "full payment promptly" provision. *See* 7 U.S.C. § 499b(4). "Full payment promptly" means payment within ten days after the buyer accepts the produce. *See* 7 C.F.R. § 46.2(aa)(5),(11). However, a buyer and seller may agree to extend the time for payment, as long as the aggregate time for payment does not exceed thirty days after the buyer receives and accepts the commodities. *Id.* § 46.46(e)(2). Therefore, if a seller of produce agrees to extend the time for payment more than thirty days following delivery and acceptance of the produce, the seller may no

8

longer assert any right to a PACA trust or seek recovery from a principal of the buyer. *See Idahoan Fresh v. Advantage Produce, Inc.,* 157 F.3d 197, 206 n. 9 (3d Cir. 1998).

Here, the Plaintiff has provided evidence that it sold produce to Defendant from September 26, 2007 through December 20, 2007 without any payment from Defendant. The invoices issued to Defendant reflect the necessary language to establish a PACA trust and to notify the Defendant that payment is to be made within 30 days. Plaintiff testified that it had no agreements with Defendant outside of the invoices to extend the payment terms.

Plaintiff's specific PACA claims against Defendant include a failure to maintain a PACA trust, dissipation of trust assets, and failure to pay trust funds. Accepting the factual allegations of the Complaint as true, this Court recommends finding that Plaintiff has alleged viable claims under the PACA for Defendant's failure to pay the amount owed for purchased produce.

B. <u>Breach of Fiduciary Duty</u>

Although this claim appears to be brought pursuant to the PACA as well, the Court finds that a separate analysis is necessary. Plaintiff alleges a claim of breach of fiduciary duty against "All Defendants," which presumably includes Red Tomato, Inc. However, Plaintiff's specific allegations within the claim refer only to the individual Defendants, which is proper under the PACA. *See Bocchi Americas Assocs., Inc. v. Commerce Fresh Mktg., Inc.*, 515 F.3d 383, 388 (5th Cir. 2008) (PACA's secondary liability on persons who control trust assets is premised on the breach of the *individual's* fiduciary duty to protect PACA trust assets) (emphasis added). Since the within motion is directed only to the corporate Defendant, the Court recommends finding that Plaintiff has failed to state a viable claim of breach of fiduciary duty against Defendant Red Tomato, Inc.

C. <u>Breach of Contract</u>

For an enforceable contract to exist, there must be mutual assent to an exchange between competent parties, legal consideration, and sufficient certainty with respect to the subject matter and essential terms of the agreement. *See e.g. Denver Truck Exch. v. Perryman*, 134 Colo. 586, 592, 307 P.2d 805, 810 (1957); *see also Industrial Prods. Int'l, Inc. v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997). Here, Plaintiff has provided sufficient evidence of assent and sufficient certainty regarding the subject matter and essential terms of an agreement with Defendant Red Tomato. Plaintiff has provided copies of the original credit application executed by Defendant, along with copies of all invoices issued to Defendant that remain unpaid. Accepting Plaintiff's factual allegations as true, this Court recommends finding that Plaintiff has alleged a viable claim for breach of contract in this matter.

## III. DAMAGES

Plaintiff seeks relief against Red Tomato, Inc. under Section 5(c) of the PACA for the unpaid invoices totaling $93,796.49, for accrued interest on unpaid amounts at the rate of 18% per annum (which is authorized by the parties' agreements) totaling $11,394.12, and for post-judgment interest pursuant to 28 U.S.C. § 1961 at the rate of 2.26% per annum.

The burden is on the plaintiff to establish entitlement to recovery of damages against a defaulting defendant. *See Clague v. Bednarski,* 105 F.R.D. 552 (E.D.N.Y. 1985). Damages must be established by proof, unless they are either susceptible of mathematical computation or liquidated as of the default. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).

Here, considering the evidence provided by the Plaintiff (including copies of the outstanding invoices reflecting not only the amounts due, but also the parties' agreement that interest would

accrue on sums due and payable), the calculations made by Plaintiff for the accrued interest on each invoice (docket #11-3 at 4-5), and accepting the factual allegations of the Complaint as true, the Court recommends finding that Plaintiff has established its entitlement to recovery of its damages against Defendant Red Tomato.

IV.    **ATTORNEY'S FEES**

Plaintiff seeks an award of fees in the amount of $5,865.00 for 17 hours of work and $505.27 in costs for attempting to collect the unpaid amounts over a three-month time period. A party requesting an award of fees and costs bears the burden of establishing entitlement to the award and documenting the appropriate hours expended and hourly rates. *Hensley v. Eckerhart,* 461 U.S. 424, 438 (1983). A good faith effort must be made "to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434.

Here, Plaintiff seeks to recover his reasonable attorney's fees and costs in this matter, both pursuant to the PACA and to the Defendant's agreement to pay attorney's fees and costs for collection of unpaid amounts as reflected in the language of the outstanding invoices and in the New Account Application with Plaintiff. Docket #1 at 11.

The PACA provides in pertinent part:

(2) Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment **of the sums owing in connection with such transactions** has been received by such unpaid suppliers, sellers, or agents.

7 U.S.C. §499e(c)(2) (2008) (emphasis added). Where the parties' contracts include a right to attorney's fees, they can be awarded as "sums owing in connection with" perishable

11

commodities transactions under PACA.  *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007); *see also Country Best v. Christopher Ranch, LLC*, 361 F.3d 629, 632 (11th Cir. 2004); *Middle Mountain Land & Produce v. Sound Commodities*, 307 F.3d 1220, 1225 (9th Cir. 2002).

Here, the New Account Application executed by the Defendant provides: "Applicant agrees to pay when due any indebtedness of the applicant heretofore or hereafter incurred, plus 1-1/2 percent interest per month on the unpaid balance and all costs and expenses including reasonable attorney's fees incurred in collection of any amount owed."  Docket #31-27 at 3.  In addition, the unpaid invoices include the following statement, "In the event legal action is taken to collect a past due account the buyer agrees to pay all collection and/or attorney fees." *See e.g.* docket #11-2.  Thus, pursuant to the agreements executed by Defendant and to the prevailing law finding that awards of attorney's fees are appropriate under the PACA, this Court recommends finding that Plaintiff has established an entitlement to its reasonable attorney's fees and costs in this matter.

A review of Plaintiff's counsel's billing records reflects that his hours, hourly rate and out-of-pocket expenses are reasonable for his attempted collection of the unpaid invoices in this case. *See* docket #30-2.  The Court observes no excessive, redundant or unnecessary work on the part of Plaintiff's counsel.  Therefore, this Court recommends that Plaintiff be awarded attorney's fees in the amount of $5,865.00 and costs in the amount of $505.27.

## **CONCLUSION**

Based on the foregoing, and the entire record provided to the Court, I do hereby RECOMMEND that the District Court grant the Plaintiff's Motion for Default Judgment against

Defendant Red Tomato, Inc. d/b/a Red Tomato Specialty Produce ("Red Tomato") [filed July 22, 2008; docket #11] as follows:

1. Enter a judgment in favor of Plaintiff and against Defendant Red Tomato, Inc. d/b/a Red Tomato Specialty Produce in the principal amount of $93,796.49, plus pre-judgment interest of $11,394.12, attorney's fees of $5,865.00, costs of $505.27, and post-judgment interest as allowed by law;

2. Direct Defendant to establish and/or preserve a trust fund consisting of funds sufficient to pay Plaintiff's principal PACA trust claim of $93,796.49, plus prejudgment interest of $11,394.12;

3. Enjoin, until the entry of the relief herein requested and compliance therewith, Defendant from in any way, directly or indirectly, transferring, assigning or otherwise disposing of the above-described trust fund, or any interest therein, in whole or in part, absolutely or as security; and

4. Direct Defendant to assign, transfer, deliver and turn over to Plaintiff as much of the above-described trust fund as is necessary to fully compensate Plaintiff for its damages set forth in paragraph 1.

Dated at Denver, Colorado, this 17th day of September, 2008.

BY THE COURT:

s/Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge